May it please the Court, my name is William Haddock, representing the appellant Gregory Hawk. My firm and myself represented Mr. Hawk and his former wife, Marcy Hawk, through all aspects of the underlying bankruptcy case. This case really is a saga of a correctly decided Chapter 13 case. It was before this court back in 2012. It has reverberated through the bankruptcy courts of Texas and has resulted in a fundamental change in what constitutes property of Chapter 7 bankruptcy estates. It has caused great confusion across the four judicial districts in Texas and it is still being worked out to this day. This confusion has resulted in delays to Chapter 7 debtors receiving a fresh start. It has also rendered the interpretation that has resulted as rendered meaningless when exempt property vests with debtors as set forth in Owen v. Owen from the United States Supreme Court as well as under Section 522C of the Bankruptcy Code. In this case, the facts are very simple. They are agreed to by all the parties and what happened in this case involves an IRA account which is exempt under Section 42.0021 of the Texas Property Code. The creditors meeting in this case concluded on March 27, 2014. The trustee on April 3 issued a report of no distribution and at that point the clock was just counting down to the time in which the trustee or other parties and interests could object to the exemptions or to a discharge. The deadline to object to exemptions passed. About a month later, an adversary proceeding where a creditor objected to the discharge of all of the debts under Section 727 was filed and that started proceeding through discovery and whatnot. During discovery in that case, it was discovered that Mr. Hawk had liquidated an IRA and used those proceeds to pay expenses and to live on and so forth. That's why we're here today because the trustee hired counsel, filed a motion to turn over the property to the estate that had become non-exempt using the Frost case which was decided by this court and then a subsequent case that was decided by the bankruptcy court just a couple of months prior to this motion for turnover being filed. Which stated in a Chapter 7 case that any property that had been exempt but the exemption that gets lost due to the passage of time reverts to the estate. That was a Chapter 7 case and that was the first time that the Frost case, which was a Chapter 13 case, had been applied to Chapter 7. The Frost case that was decided didn't, in the body of the opinion, it did not mention the chapter. There was one reference, though, in the opinion around page 385 about when the vesting of property occurs, but there was no reference to the chapter. But yet every subsequent opinion that's come out post-Frost analyzes Frost in the course of a Chapter, as a Chapter 13 case, analyzes Chapter 7 and when property exemptions occur in subsequent events. And those cases, whether it's like the Smith case or the original DeBerry case in the Western District, it's flat out rejected the application of Frost in Chapter 7. Then in March of this year, the District Court heard the DeBerry appeal and said, no, wait a minute, we're going to apply Frost to Chapter 7 cases. And that case is now heading up to this court where the appellant's brief will be filed probably in a couple of weeks. So it's important to look at the difference between Chapters 13 and Chapter 7. Why would that make a difference? Well, it's a huge difference because in Chapter 13, under Section 1306, all proceeds from sales generated from property, income, and so forth, is property of the estate. It says it in Section 1306, whereas in Section 541, which applies to all bankruptcy cases, no matter the chapter, proceeds or earnings from property are of the estate or property of the estate. But everything is premised on being property of the estate or property that comes into the estate. Under Owen v. Owen and under Section 522, when exemptions are allowed, that is, after all objections, the time to object is passed and nothing has happened, like in this case, exempt property vests with the debtor. It's the debtor's property. At that point, it is no longer property. No matter what happens, no matter if there's a change in the exemption. I mean, in this case, it's exempt because it's an IRA, but once the IRA is cashed in, doesn't that change the circumstances? I don't think it does. And cashing in the IRA happened after the period for objecting to exemptions occurred. Well, I couldn't have objected during the time it was in the IRA or for 60 days afterwards. Well, an objection, if an objection was made, the property would have stayed in the estate until the objection was ruled on. But then there would have had to be an objection that even though this property is now exempt, it might lose its exemption in the future, so we're going to object even though we have no basis now for objecting. And that's a problem with the way that Frost has been interpreted and applied in Chapter 7 cases. You just said that under the whatever cited was, that it applies, that that rule applies to all bankruptcies, whether it's 7, 13, 11, whatever. That's correct. And when an objection is made, you know, the property stays as property of the estate. The Davila case out of the Western District had this very same, had this very problem where the debtor in that case decided to sell their homestead. And during the pendency of the case, the trustee objected to the sale saying, you know, saying that I want to extend the period to make my objections to exemptions in the event that after six months, those proceeds are not reinvested into a new homestead. And the court wrote this opinion in overruling that objection, you know, basically saying in that court's opinion that Frost did not apply. And at that point, Frost had not been decided by this court. It was matriculating up through the district court. And the Davila judge went into, you know, great explanation about the difference between a Chapter 13 and a Chapter 7 case and did say in dicta that if Davila was a Chapter 13 case, that this decision would have been totally opposite. But it also, the other difference between Chapter 7 and Chapter 13 is that Section 1327 provides for when property vests with the debtor. By default, property vests with the debtor at confirmation. Most of the standard Chapter 13 plans, however, reserve vesting until the time of discharge. And that was a factor that courts ruling that don't apply Frost to Chapter 7 cases have also relied upon. That was described in great detail in the Southern District in the Montemayor case. It was also described in the first DeBerry case decided by the bankruptcy court and addressed in the subsequent opinion by the district court where the district court reversed. So if this was a homestead instead of an IRA, are you saying because it's a Chapter 7, then they could sell their home and keep the proceeds because it's a Chapter 7? Once the, again, once the objection, once the exempt property vests with the debtor, that is the time to object is passed, at that point the debtor should be able to benefit from a fresh start. All they have to do is just wait for that deadline. Since that deadline comes, then we can sell our IRAs. We can cash in our IRAs. We can sell our home and keep all the proceeds. Yes. In fact, in the one other case that involves an IRA expressly, which is the Moore case that was decided in the summer of 2016 in the Eastern District, it was the case of an IRA where the debtor started liquidating the IRA expressly to provide for her living expenses because the debtor was unable to work. It was, you know, had early stage Alzheimer's and, you know, this was, you know, what the debtor was going to live on. And to tie that up, you know, indefinitely while the estate stayed open would, you know, prohibit a fresh start. Unlike a Chapter 13 where the debtor remains in possession of their property, you know, all they have to do is apply their future income to, you know. Did the Frost decision go into this explanation distinguishing a 13 from a 7? It did not. Even though, you know, like the Davila case said that in the briefing in Frost as well as in the arguments in Frost that there was a lot of discussion about Chapter 7 versus 13, the opinion from this court, you know, made no distinction. It made no reference to any chapter whatsoever. The analysis was strictly on the Texas exemption statute, which was analogous to the IRA exemption statute, as well as Section 522, which, you know, governs exemptions in all bankruptcy cases. Now Frost cited the, is it the Zibman case? That's correct. That was a 7, was it not? Zibman was the, yes. So doesn't Frost rely on the principles established in a Chapter 7 case? Yes. Frost talks, and Zibman also talks about the snapshot rule. And what happens is Zibman was, you know, the, going into the bankruptcy, the debtor had cash proceeds. The clock was running, and it actually ran out three months later. And Zibman correctly held, and it stood the test of time, that that exemption expired. Therefore, you know, plus the exemptions had never been allowed because Zibman was an objection to exemption. So the property was always property of the estate. It had never vested with the debtor. Unlike this case here with Hawk, where the property had revested with the debtors, you know, pursuant to the Owen versus Owen holding. Considering that I have about 30 seconds, unless there are any other questions, that will conclude my presentation at this time. All right. Thank you, sir. Mr. Power. Good morning, Your Honors. My name is Aaron Power. I represent the appellee in this case who is a Chapter 7 trustee in the Southern District of Texas, Ms. Engelhardt. Mr. Haddock is correct that the facts are undisputed in this case, but his recitation of the facts ends before the most important fact in this case, and it explains the injustice that happened to the creditors. Mr. Hawk did not receive a discharge in this case. The way that this issue arose was that a creditor sued him under 727 to prevent him from receiving a discharge. In a deposition, he said it came out that he had liquidated his IRA, and he said, quote, I have $30,000 of that money in cash sitting in a shoebox under my bed. That's how this started. And as that litigation continued, this appeal was running, and eventually the discharge was denied. That has been appealed. That's now a final order. So if you follow the appellant's logic, the objection to exemption deadline runs. At that point, he's free to do with his house or his IRA, I'm sorry, whatever he wants to do with it. But when the discharge is denied, that prepetition creditor would have, but for the bankruptcy, had a right to recover the non-exempt funds. It is only the automatic stay at that point that would prevent the debtor at that time from doing it. So you've got a debtor. You have a debtor who has received no discharge and yet has used the bankruptcy code to convert a specific kind of exempt asset into what becomes an unlimited exemption in cash. The bankruptcy case was still open when this occurred. It wasn't like the trustee coming back asking for the case to be reopened. It still had not been discharged and was an open case. That's correct. It was an ongoing and open case. Yes, Your Honor. And so I think that entire picture of the fact shows what really happened here and why this is not a fair outcome unless the Frost rule applies in a Chapter 7 case. And so there are two issues before the court. First, does Frost apply in Chapter 7 cases? Second, does Frost, which related to homesteads, also apply to the IRA statute? On the first issue, as Mr. Haddock mentioned, there are two district courts that have considered that. It is a matter of first impression before this court. But both of the district courts that have considered it came out the same way, and they said Frost should apply to Chapter 7. Judge Harmon in this case, more recently the Western District of Texas in the DeBerry case. That opinion, Judge Lambreth, is my best case. If you read the analysis in that conclusion, it is almost verbatim as to what I'm going to argue to Your Honors this morning. That is on appeal. No briefs have been filed. I'm not sure what the timeline on that is. But that same question of whether Frost applies in Chapter 7 will quickly be before this court again. So there are four reasons the trustee believes that Frost should apply in Chapter 7. First, Frost analyzes two statutes, 522 of the Bankruptcy Code and the Texas Property Code Exemption for Homestead Exemptions. Both of those statutes apply the same whether you're in Chapter 7, Chapter 11, or Chapter 13. There's nothing unique about those particular statutes that would apply differently in any one of the sections of the code. Second, as previously mentioned, Frost was clearly a Chapter 13 case. The briefing below, the opinion below discussed that it was a Chapter 13 case. I believe that if the panel had intended for Frost to be limited to applying only in Chapter 13 cases, that would appear somewhere on the face of the Frost opinion. The fact that the panel did not even mention that it was a Chapter 13 case to me implies that the rule that was being announced applied across all chapters because they were discussing 522 of the Bankruptcy Code and the Homestead Exemption statute. Third issue is the most common argument made for why Frost should be limited to Chapter 13 cases is Section 1306 of the Bankruptcy Code. That's the idea that in a Chapter 7, your post-petition income is not property of the estate. You file Chapter 7, and whatever you require after the date that you file belongs to you, not the trustee. In a Chapter 13 case, your post-petition income and property that you subsequently acquire is property of the estate, and that is what is used to fund the Chapter 13 plan. I think that that is an incorrect analysis that many of the opinions have made because when you take a homestead or an IRA and subsequently convert it, it's not after acquired property, and it's certainly not income. That property, the homestead or the IRA account, existed on the petition date. It was property of the estate as of the petition date. What has happened, and this is the language that's used in Frost and Zidman, is merely a conversion of the character of a piece of property of the estate from exempt in nature to non-exempt. And so that's why I don't think 1306 applies. And the fourth point is that Section 554C of the Bankruptcy Code discusses when property revests in the debtor. That's really the part of the code that puts an end to Chapter 7 cases. Notably, if you look at that, it says upon closing of the case, property that was scheduled revests in the debtor. It doesn't say property of the estate under Section 541. It says property that was scheduled. And you schedule both your exempt and your non-exempt assets. And so, for example, in this case, the debtor was able to liquidate that asset under the pre-Frost rule because the case hadn't been closed. And so if you look at Judge Bohm, who was the author of the original opinion in this Hall case, wrote a case called N. Ray Smith, and that's typically what has been cited for the proposition that Frost applies in Chapter 7 cases. And in that, he relies on 554C because that's the nail in the coffin. That's really the point at which you switch from the exemption existing during the case to the exemption existing after the case. We've talked a lot about Frost today. I'm sorry, I got your first three. You lost me on number four. Sure. The appellant would have the court rule that the minute at which the debtor has the right to liquidate its exempt assets and retain them as non-exempt cash would be the point at which the trustee could no longer object to an exemption. And our argument is that the deadline for which the trustee has to recover non-exempt property runs all the way until the closing of the case. Discharge? No, it's actually further than that, because there are some cases that have posited that the deadline should be the point of discharge. But under 727D and E of the Bankruptcy Code, the trustee has the right to seek a revocation of a discharge until the case is closed. So, for example, even if you receive a discharge, if your case hasn't been closed yet and it's subsequently discovered that you hid an asset or you have committed some kind of fraud, even though your discharge was allowed, if the case is open, the trustee can go ask the court to revoke that discharge. And so that's why I think 554C and the closing of the case should be the relevant date, which is what would be consistent with Frost. So if you have a situation where you cash in the IRA or sell your home a week before the case is closed, and then six months into it, you have to reinvest it or something, and a day before those six months, or you never reinvest it, do you still have those six months in which the case can be reopened? Or once the case is closed, that's it? You can go and sell your home and cash your IRA? I would say that at that point, you are simply subject to state law, and that's really the fresh start moment. You've come out assuming you've gotten a discharge, which didn't happen in this case. It is correct that under state law, you do have the right to sell your house and keep the equity in it as cash. The only reason that you can do that as a practical matter, though, is that you no longer have creditors to come after those funds. It's still non-exempt. It's just the fact that there are no creditors with claims against the non-exempt cash at that time. So there is a point under state law, if you have gone through bankruptcy and you do get your discharge, where, yeah, we acknowledge that there is a point that you can take an exempt asset and turn it into non-exempt cash, but it shouldn't be until you have gone through the entirety of the bankruptcy case. The second issue about whether or not the Frost opinion, which discusses the Homestead statute, should also apply to IRAs, I think, is the easier of the two questions but also invokes the more important policy considerations. If you look at the two sections of the Texas Property Code, they are drafted almost verbatim, in terms of the reinvestment requirement. The language used to say that you have six months to reinvest your Homestead proceeds tracks exactly with the language that says you have 60 days to roll over your IRA distributions. And so I would argue that where two statutes have been drafted with parallel language, they should be interpreted the same way. My second point on this is the policy considerations are the same. And this is where we really need to get into the line of cases that led to Frost. So we start with a case called N. Ray England from 1992, and then there's N. Ray Zibman, authored by Judge Wiener in 2001, leading up to Frost in 2014, of which I know Judge Stewart was on the panel. If you begin with England, there the debtor had a ranch and a house, had sold his ranch, which was previously his homestead, moved into his house, filed a Chapter 7 case, and claimed that the ranch proceeds were exempt under the portion of the statute that exempts homestead proceeds, and also claimed that the new house he moved in was exempt. So he was trying to double dip. And what the court said is that the rollover portion of the statute is not there to protect proceeds as proceeds. It's there to prevent homelessness. The policy behind the Texas homestead exemption is that when you get a fresh start, the state of Texas wants you to have a home, whichever roof over your head. They don't want you to have an unlimited cash exemption. And now other states that do not have the kind of generous homestead exemption that we have give you a cash exemption. They say you can keep a certain amount of cash. Even if you elect the federal exemptions under the bankruptcy code, you can exempt $1,250 in cash. Texas doesn't allow you to exempt cash. So the purpose of it is not to say that you get the benefit of all the equity as cash. Your benefit is that you get to keep your home. And I would argue that the same logic applies to the IRA. Texas is trying to give people a fresh start that have, in good faith, invested in their retirement for those funds to be used when they're in their retirement, not as a substitute for cash. And so when you are taking an exempt IRA and turning it into cash, you are again converting what Texas meant to be an exemption in a specific type of asset that it made a policy decision about and turning it into something else, which is just cash. The other case is N. Ray Zibman. And following off of England, it says that there is really only one statute. It's the same idea. There isn't a statute that protects a homestead and proceeds or an IRA and proceeds. It's all interrelated. And so you can't divide up this idea and say, well, I have one exemption in real property and one exemption in personal property as cash. And so that's where the phrase the entire state law applicable on the filing date applies to the exemption. And that's ultimately the holding in frost. We've talked a lot about that but never really drilled down on what it means. We use in bankruptcy the phrase the snapshot rule a lot, and that's just sort of a term of art that people use. But really what it means is, let's say you take a picture on the date of the petition. You have a set of assets, and the character of those assets are determinative of your exemptions on that date. The difference in what frost ended up ruling was that in that photograph is also applicable state law. And then if you look at the line of cases from England to Zipman to frost, collectively, so in that photograph, if you have a house, the entire state law applies. It doesn't matter whether it's a house or the proceeds because it's all part of one scheme of exemptions. So if your house is in the photograph, the real property exemption applies, but you are also burdened with the obligation, if you sell that house, to reinvest those proceeds. That's part of what is your exemption. You don't get it free and clear of state law. You get it subject to the burdens of state law. As discussed in Smith at length by Judge Bohm, the reinvestment requirement for both IRAs and for homesteads is there to protect both the debtor and also creditors. Think about that. The law could say if you have a homestead and you sell it, those funds are permanently exempt. That wouldn't benefit creditors, and that's essentially what's happening here. The law doesn't say that. The law puts some time limit on the fact that if you're going to sell your house and you're going to convert it into cash, at some point creditors are going to get that money back. And Texas has determined that that's six months for homesteads and 60 days for IRAs. I would just conclude briefly saying that I probably believe that affirmance in this case is both the correct and an inevitable result, really. If you just look at the plain reading of Frost, Chapter 13 is not mentioned. Could you explain to me why the bankruptcy judge in the Enrique Montemayor case made a distinction between a 7 and a 13 and said this doesn't apply? Why was his analysis incorrect? There's a couple reasons there. He talks about he uses the phrase that once the exemption is allowed in the homestead, thus fully exempting the value of the homestead, less secured liens, not proceeds from a post-petition sale. And I think that is a misunderstanding of the homestead exemption. Texas hasn't given you a homestead exemption in the equity in your house. That's not the exemption. The exemption is a house. It happens to be unlimited, whereas most other states are not unlimited. But saying that if you start from the premise that you have an exemption in the value in your house, it's a lot easier to get to the idea that you somehow now have an exemption in cash, which you don't under state law. Also, he talks about 1306 and, again, analogizes the idea of it being post-petition income. I just fundamentally disagree that if you sell your house or you liquidate an IRA before you're of retirement age, that you should be thinking about that as income. I think, again, that's an asset. It existed on the petition date. All you've done is convert the nature of that asset from real property into cash. So, again, that's one of the several cases that relies on 1306, I believe, incorrectly. So, really, in order to reverse today, the court would have to do one of two things. It would simply have to reverse Frost on some level. I mean, I think that doing anything other than affirmance is putting Frost at risk, and I don't think that the court wants to do that. And the second thing it could do is sort of graft onto Frost the new limitations or restrictions that are being requested by the appellant. They're just not there. It's not in the opinion that that was limited to 13, and if you look at the entirety of the bankruptcy code sections that are relevant, again, 522, 554, and even 1306, you just don't get to a place where there is some implicit or underlying limitation in Frost that is not in the text. That's all I have unless you have any questions. All right. Thank you, sir. Thank you. Back to you, Mr. Herrick. To clear up a couple of things, the IRA and the homestead exemption, really, there are some differences. We've been talking about homesteads a lot because that's where the body of law is. It provides the analysis here. But it's talked about in the Moore case. Homesteads are an exemption in land itself, and there is this proceeds exemption for when that land is sold, whereas an IRA has been described as a monetized account. The exemption not only is in the account itself, but the exemption also extends to the right to receive payment from that account. The statute refers to the person's right to assets held in or to receive payments, whether vested or not. Then it lists all the different kinds of accounts thereafter. So the nature of the exemption is slightly different. Now, once the payment has been received, the question is, does it lose its exemption after the debtor holds it for more than 60 days? Again, that's pretty clear-cut, and the concept of the temporal nature of this 60-day exemption or six months is not in dispute here. Another thing, Mr. Power hit on this concept of scheduled versus non-scheduled property. What's really important about that is when a debtor doesn't schedule an asset, then that asset that's unscheduled always perpetually remains property of the estate because the trustee has never known about it, and the trustee, when they do later find out about it, has the ability to go in and reopen the case and try to seek other relief, whether it's a denial of a discharge or whatnot. That same section that Mr. Power talked about says that any property of the estate that's not administered at the time of closing is abandoned back to the debtor. That inherently would be any property that was not exempted by the debtor. And then, of course, administered property has been sold and just proceeds distributed to the creditors and is required by the bankruptcy code. In order for the Smith case, however, to really work and the progeny of Smith to really work, you have to go back to the part of the opinion in Smith where it talks about a contingent asset in potential future proceeds. That's a pretty contingent asset. Most people will sell their homestead at some point in their lives if they don't die first. That's just the nature of life. But when that homestead will be sold, it is unknown. And this is the fatal flaw in Smith, and it's also been talked about briefly where Judge Bohm said the magic date is closing. In the Davila case, the judge talked about, well, the real problem here is the fact that estates could stay open forever without any resolution so we can see what happens with property. In the DeBerry case, that was talked about and briefed also about the risk for abuse of keeping estates open. And keeping an estate open delays a fresh start. And it doesn't matter whether a debtor engaged in bad conduct or a particular debtor was denied a discharge. The bankruptcy code is there to provide relief for all the parties. And just the fact that a debtor doesn't ultimately receive a discharge does not mean that the debtor cannot enjoy the benefit of the property exemptions afforded to them under the applicable state law. And this Court really does need to recognize the difference between a Chapter 7 and a Chapter 13 case when it comes to that, and to do that does not require overruling Frost. Thank you. All right. Thank you, counsel. That completes the session for this panel. The cases will be submitted. The panel stands adjourned.